**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KIMBERLY RUIZ-MCMILLION,** CASE NO.:

Plaintiff,

v.

**EXPERIAN INFORMATION SOLUTIONS, INC. and CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,**

Defendants.

______________________________________________/

**PLAINTIFF'S COMPLAINT**
**JURY DEMAND**

1. Plaintiff, Kimberly Ruiz-Mcmillion (hereinafter "Plaintiff" or "Ms. Ruiz-Mcmillion"), brings this action against Defendants Experian Information Solutions, Inc. ("Experian" or the "credit reporting agency") and Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless" or the "Furnisher Defendant"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter the "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Osceola County, Florida, where Plaintiff resides. Assignment to the Orlando Division is proper under Local Rule 1.04 because the claim arose and Plaintiff resides in Osceola County.

**PARTIES**

5. Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Osceola County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is an Ohio corporation incorporated under the laws of the State of Ohio that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681(d) to third parties.

7. Defendant Verizon Wireless is a general partnership organized and existing under the laws of the State of Delaware that regularly conducts business in the State of Florida or is registered to conduct business in the State of Florida with a principal place of business located at One Verizon Way, Basking Ridge,

New Jersey 07920. At all relevant times, Verizon Wireless conducted business within the State of Florida and Osceola County. Verizon Wireless regularly furnishes information relating to consumers to consumer reporting agencies and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

8. Defendants use instrumentalities of interstate commerce for the purpose of furnishing and exchanging information concerning consumers, which instrumentalities are largely electronic, written, or telephonic communications that have effects on consumers and their credit reports within the State of Florida.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

9. The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

10. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. § 1681(a)(1).

11. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right

to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

12. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. § 1681s-2.

13. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3), (4).

14. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub. L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

15. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs," and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any differently than a regular dispute.

16. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

17. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation, or the consumer obtained goods, services, or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified

of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. § 1681c-2(c)(2).

18. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

19. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

20. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

21. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

22. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

23. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C. § 1681i(a)(2)(A).

24. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

25. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

26. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

27. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

28. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1681n.

29. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

30. The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

31. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. § 1681s-2(b), must conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

32. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

33. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall … (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A)(i), (ii).

34. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages of not less than $100.00 and not more than $1,000. § 1681n(a).

35. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes; (ii) employment purposes; or (iii) any other purpose authorized under section 1681b of this title. 15 U.S.C. § 1681a(d)(1).

36. The terms "consumer report," "credit report," and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the e-OSCAR Reporting Platform*

37. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

38. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian, along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of

disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

39. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

40. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

41. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

42. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

43. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each

CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

44. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

45. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### I. Background Information

46. Plaintiff is the victim of identity theft involving a fraudulent Verizon Wireless tradeline that was never opened by Plaintiff and never authorized by Plaintiff. In fact, Plaintiff rejected an offer by Verizon Wireless to open an account with them. In or around January 2025, Plaintiff rejected an offer from Verizon Wireless and decided to keep her current wireless service with her existing carrier, AT & T.

47. Despite never signing an agreement and explicitly rejecting an offer to open a Verizon Wireless account, inexplicably Verizon Wireless in January 2025

mailed the Plaintiff a Verizon Wireless phone. At or around that time, Plaintiff contacted Verizon Wireless repeatedly advising them that no agreement had ever been entered into as Plaintiff rejected their offer. Plaintiff also asked Verizon Wireless for instructions to return the phone they wrongfully sent to her. After being given onerous instructions to return the phone in person at a distant location, Plaintiff later returned the phone as instructed by mail.

48. Nevertheless, in or about April 2025, Plaintiff first discovered that a fraudulent account had been opened in her name by Verizon Wireless and immediately contacted Experian to dispute the fraudulent account and have it removed. Despite her best efforts to dispute the Verizon Wireless with Experian, Experian failed to properly investigate and remove the disputed fraudulent Verizon Wireless account. Experian even performed a reinvestigation of this dispute and in their reinvestigation result dated April 24, 2025 Experian verified the non-existent or fraudulent Verizon Wireless account as accurate.

49. Plaintiff then reported the identity theft to law enforcement and to the Federal Trade Commission. Plaintiff filed a Federal Trade Commission ("FTC") Identity Theft Report dated November 18, 2025 explaining her identity was used without her permission to create a fraudulent Verizon Wireless account

and that there was a claimed fraudulent amount of $1,098 being asserted against her.

50. The FTC Identity Theft Report constitutes an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

51. Beginning in or about April 2025, Plaintiff disputed the fraudulent account and associated information with Experian and received a reinvestigation result wrongfully verifying the account.

52. Plaintiff thereafter submitted a written dispute letter to Experian by certified mail. In that written dispute, Plaintiff identified the specific fraudulent account, stated that it resulted from identity theft and did not relate to any approved transaction by Plaintiff, enclosed proof of her identity together with her FTC Identity Theft Report, requested deletion of the fraudulent account and information and expressly requested, pursuant to 15 U.S.C. § 1681c-2 (FCRA § 605B), that Experian block the fraudulent information. The written dispute was delivered to Experian as set forth below.

## II. Disputes with Experian and Verizon Wireless

53. On or about April 2025, an investigation result was conducted by Experian regarding the disputed Verizon Wireless tradeline, a further reinvestigation was conducted on or about April 24, 2025 wherein Experian verified this

tradeline as accurate. Experian communicated with Verizon Wireless with respect to matters concerning the disputed Verizon Wireless tradeline. The disputed Verizon Wireless tradeline continued to be verified in a subsequent Experian credit reports dated November 12, 2025, which indicated nine months of negative derogatory credit reporting, that this fraudulent account had been closed and sent for collection and that the consumer had previously disputed the account information.

54. Plaintiff further disputed the Verizon Wireless account and mailed a dispute letter to Experian, which was duly received by Experian on December 20, 2025, further disputing the tradeline reported by Verizon Wireless, Partial Account No. 427195 and requesting the entire tradeline be deleted as unlawfully furnished and attaching the FTC Identity Theft Report dated November 18, 2025 explaining that it was a fraudulent account.

55. Experian failed to block the fraudulent Verizon Wireless account and delete it promptly. However, on or about January 12, 2026 a further Experian reinvestigation result now agreed with Plaintiff’s further dispute and agreed that the disputed Verizon Wireless tradeline would be entirely deleted from her credit report. Upon reviewing subsequent Experian credit reports including the July 23, 2026 credit report, Plaintiff found Experian deleted the disputed Verizon Wireless tradeline.

## III. The Furnisher Defendant's Failure to Investigate

56. Verizon Wireless furnished the fraudulent Verizon Wireless tradeline to Experian. After Plaintiff disputed that tradeline, Experian notified Verizon Wireless of the dispute by transmitting an ACDV to Verizon Wireless through the e-OSCAR system. Upon receiving notice of the dispute, Verizon Wireless verified the fraudulent tradeline as accurate, or otherwise failed to correct or delete it, and reported that result back to Experian, notwithstanding that the account was fraudulent and did not belong to Plaintiff. Later upon a further dispute over the fraudulent Verizon Wireless account, Verizon Wireless communicated that the account was invalid or fraudulent and then Experian finally agreed to delete the disputed fraudulent Verizon Wireless account.

## IV. Plaintiff's Injuries

57. Defendants' derogatory and inaccurate reporting of the above-described tradeline and account information on Plaintiff's credit reports negatively reflected upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

58. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th

Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and See Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

59. As a result of Defendants' conduct, including but not limited to the continued publication of inaccurate information concerning a tradeline, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in her credit files, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of her statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See Coulter v. Sagestream, LLC, 501 F. Supp. 3d 298 (2020); Norman v. Trans Union, LLC, 669 F. Supp. 3d 351 (2023); Chaitoff v. Experian Information Solutions, Inc., 79 F.4th 800 (2023).

## COUNT I – VIOLATIONS OF 15 U.S.C. § 1681i AGAINST EXPERIAN

60. Plaintiff incorporates by reference paragraphs 1 and 3 through 59 as if fully stated herein.

61. During the relevant time frame, Experian received Plaintiff's dispute which requested that information be removed from her credit file.

62. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

63. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

64. Alternatively, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. § 1681e(b) AGAINST EXPERIAN

65. Plaintiff incorporates by reference paragraphs 1 and 3 through 59 as if fully stated herein.

66. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

67. After receiving Plaintiff's dispute, Experian was placed on notice that it was reporting inaccurate information, yet Experian continued to include the inaccurate information in Plaintiff's credit file.

68. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

69. In the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. § 1681c-2 AGAINST EXPERIAN

70. Plaintiff incorporates by reference paragraphs 1 and 3 through 59 as if fully stated herein.

71. At all times relevant hereto, Experian is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

72. Plaintiff identified to Experian information in her file that resulted from identity theft and/or unauthorized opening of an account by Verizon Wireless, provided proof of identity, provided an identity theft report in the form of her

FTC Identity Theft Report, and stated that the information did not relate to any transaction authorized by Plaintiff.

73. Experian violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent Verizon Wireless tradeline that Plaintiff identified as resulting from identity theft and/or unauthorized opening of an account by Verizon Wireless.

74. Experian's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT IV – VIOLATIONS OF 15 U.S.C. § 1681s-2(b)**
**AGAINST VERIZON WIRELESS**

75. Plaintiff incorporates by reference paragraphs 1 and 3 through 59 as if fully stated herein.

76. Verizon Wireless is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

77. Verizon Wireless violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agency and timely communicate with the credit reporting agency to block or delete disputed information or the disputed tradeline.

78. As a result of Verizon Wireless's violations of the FCRA, Plaintiff has been damaged. Verizon Wireless negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Additionally, Verizon Wireless committed a willful violation of the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681n(a).

79. Plaintiff is entitled to an award of prevailing-party attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Verizon Wireless in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 19, 2026

Respectfully submitted,
**SHARMIN & SHARMIN, P.A.**

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com
FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff